UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FLORIDALMA JERONIMO MENDOZA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, *et al.*,<br>Respondents. | Case No. C26-2804-MLP<br>ORDER |

Petitioner Floridalma Jeronimo Mendoza is currently detained by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging an immigration judge's ("IJ") denial of bond. (*See* dkt. # 1.) She contends the IJ abused his discretion in finding Petitioner to be a flight risk and that her continued detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (*See id.*, ¶¶ 77-87.) Respondents filed a return memorandum (dkt. # 6), along with declarations from ICE Deportation Officer Freite Subero (dkt. # 7) and their counsel, Katherine G. Collins (dkt. # 8). Petitioner filed a traverse in reply (dkt. # 10).

The Court, having considered the parties' submissions and the governing law, DENIES the petition (dkt. # 1).[1]

## I. BACKGROUND

Petitioner is a citizen of Guatemala whose native language is Mam. (Dkt. # 1, ¶ 22; Subero Decl., ¶ 3.) She fled Guatemala in 2024 to escape sexual violence and entered the United States without inspection. (Dkt. # 1, ¶ 23, Ex. A at 6; Subero Decl., ¶ 4.) Petitioner settled in Shelton, Washington, close to her sister and two nieces with whom she often spends time. (Dkt. # 1, ¶ 24, Ex. A at 6-7.) She joined a church, attending services almost every Sunday and assisting the pastor as needed, rented a room, and worked to support herself by picking brush and cleaning. (*Id.*, Ex. A at 6-7.) Petitioner has no criminal history. (*Id.*, ¶ 25, Ex. A at 7.)

On April 29, 2026, DHS officers pulled over a work van transporting Petitioner and several coworkers. (Dkt. # 1, ¶ 26; Subero Decl., ¶ 5.) A Form I-213 record states that the group "started running from the van" but were apprehended. (Collins Decl., Ex. A at 3-4; *see* Subero Decl., ¶ 5.)

On June 1, 2026, Petitioner's first habeas petition was granted and Respondents were ordered to provide a bond hearing because she was a member of the Bond Denial Class certified in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025). *Villatoro-Hernandez v. Hernandez*, Case No. C26-1764, dkt. # 10 at 3-4 (W.D. Wash. Jun. 1, 2026).

On June 15, 2026, Petitioner appeared with counsel before an IJ for her court-ordered bond hearing. (Subero Decl., ¶ 12.) In advance of the hearing, Petitioner submitted her declaration and nine letters from community members, including one from her proposed sponsor, a U.S. citizen who offered to have Petitioner live in her home and ensure she attended every

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

scheduled hearing and met all release conditions. (Dkt. # 1, Ex. A; Collins Decl., Ex. F.) Petitioner stated in her declaration that when she saw several unmarked vehicles pull over the van, her "first thought was that they were criminals or men trying to hurt [her], like the men who attacked [her] before in Guatemala." (Collins Decl., Ex. F at 7.) She was "so scared" that her "mind went blank." (*Id.*) She did not understand the officers because they spoke English, but when she was arrested she "realized they were ICE officers" and complied. (*Id.*)

The only evidence the government submitted was the Form I-213 record of Petitioner's arrest. (Dkt. # 1, Ex. B.)

At the conclusion of the hearing, the IJ denied the request for change in custody status. The initial order was issued on a checkbox form with a notation that Petitioner had "not shown that she is not a flight risk." (Collins Decl., Ex. G.) There were additional boxes checked indicating that "Conditional release" was denied and that "Ability to pay [a bond]" had been considered. (*Id.*) The order contained no written findings or analysis. (*Id.*)

On June 24, 2026, Petitioner filed an appeal with the Board of Immigration Appeals, which remains pending. (Dkt. # 1, ¶ 33; Subero Decl., ¶ 13; Collins Decl., Exs. H-I.) On July 13, 2026, the IJ issued a memorandum explaining his decision. (Dkt. # 1, Ex. C.)

Petitioner filed the instant petition on August 7, 2026, challenging the adequacy of the bond hearing afforded her. (Dkt. # 1.)

## II. LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner raises two claims in her petition. First, she alleges the IJ abused his discretion in assessing the required factors for determining whether Petitioner presented a flight risk, in violation of 8 U.S.C. § 1226. (Dkt. # 1, ¶¶ 78-81.) Second, she alleges that because her detention does not "bear a reasonable relation" to either preventing flight or preventing danger to the community, it violates the Due Process Clause of the Fifth Amendment. (*Id.*, ¶¶ 83-87.) Petitioner seeks immediate release.[2] (*Id.* at 29.)

Respondents contend the IJ did not abuse his discretion or violate due process. (Dkt. # 6 at 6-7.) They argue that even if the Court finds legal error in the IJ's decision, the proper remedy is a new bond hearing. (*Id.* at 7.)

### A. Bond Denial

Habeas courts review an IJ's bond determination for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779-80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *Guerra*: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States;

[2] Petitioner also contends she should not be required to exhaust administrative remedies or exhaustion should be excused. (Dkt. # 1, ¶¶ 59-76.) Failure to exhaust is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 211-12, 216 (2007), that Respondents do not raise in their return (*see* dkt. # 6). Because exhaustion is a prudential rather than jurisdictional requirement here, and the Court finds habeas relief is not warranted, the Court need not further address exhaustion.

(3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding").

Here, the IJ relied on Petitioner's "very limited ties to this country, her limited opportunities for relief from removal, her unauthorized employment in the United States, and her attempts to elude arrest by immigration officers[.]" (Dkt. # 1, Ex. C at 4.)

The IJ acknowledged Petitioner's testimony that "when she ran from the immigration officers, she did not know they were immigration officials" and she "panicked because of prior sexual assault experienced in her country." (Dkt. # 1, Ex. C at 4.) The IJ also summarized the government's submitted evidence that when officers stopped the van Petitioner was riding in, "she initially fled on foot and attempted to elude arrest." (*Id.* at 3.) After summarizing the

evidence, the IJ found that when "officers attempted to apprehend [Petitioner], she fled on foot to elude arrest." (*Id.* at 4.)

Petitioner argues the IJ abused his discretion in finding that she "attempted to elude arrest without meaningfully engaging with the contrary evidence" and that the IJ "should have addressed" her testimony that she did not know the men were ICE officers. (Dkt. # 10 at 6 (cleaned up).) Petitioner argues the IJ disregarded her testimony "without providing any rationale." (*Id.* at 7.) It is clear, however, that the IJ considered Petitioner's and the government's evidence and found the government's evidence more credible. The Court cannot reweigh the evidence. An IJ's "underlying factual determinations" such as "credibility" are unreviewable. *Martinez*, 124 F.4th at 782-82 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)).

Petitioner next argues that the IJ was "required to examine the full context of the arrest" before concluding that she was eluding arrest, including evidence from the government's own submission that the ICE officers were "shouting English-language commands" that Petitioner could not understand. (Dkt. # 10 at 6-7.) This information was in Petitioner's declaration and the government's submission, both of which the IJ stated he reviewed. He was not required to regurgitate in the written decision every piece of information submitted to him. Petitioner has not shown that officers speaking in English rendered the IJ's decision unreasonable or based on an incorrect application of law.

Petitioner contends "allegations concerning isolated conduct during an arrest encounter, without more, do not establish a rational connection to present-day flight risk." (Dkt. # 10 at 7 (quoting *Hernandez v. Hernandez*, 2026 WL 1723680, at *8 (W.D. Wash. June 15, 2026)).) In the cited case, however, the government's evidence presented only the conclusory assertion that the petitioner's vehicle "attempted to elude" officers, who "*subsequently* activated the

emergency lights and audible siren in a safe area where the vehicle could be stopped[.]" 2026 WL 1723680, at *1 (emphasis added) (internal quotation marks omitted). The government records contained "no factual description of the conduct giving rise to that characterization" and that characterization was belied by the fact that the officers did not signal that the vehicle was being pulled over until after the petitioner allegedly attempted to elude. *Id.* at *8. Here, the government's evidence provided the factual description that, *after* officers "activated the emergency lights and siren" and pulled over the van, Petitioner ran from the stopped van. (Collins Decl., Ex. A at 3.) Moreover, the officers wore "agency issued outer carriers which clearly identified them as 'Police' 'ICE'." (*Id.* at 4.)

The IJ's factual finding that Petitioner attempted to elude arrest is unreviewable. Given this attempt to flee, Petitioner has not shown that the IJ's decision finding risk of flight applied an incorrect legal standard or lacked a reasonable foundation. Accordingly, the Court concludes habeas relief is unavailable.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus (dkt. # 1) is DENIED.

Dated this 4th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge